UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20155-RUIZ/TORRES(s)

UNITED STATES OF AMERICA

vs.

DIEGO SANUDO SANCHEZ CHOCRON.
_____/

**Defendants' Joint Motion to Strike
Non-Fraudulent Allegations in Counts 1 and 2
(and Request for Oral Argument)**

Described as the "Colt 45" and "true love" of federal prosecutors, the mail and wire fraud statutes (18 U.S.C. §§ 1341 and 1343) are no stranger to the federal courts. Jed S. Rakoff, *The Federal Mail Fraud Statute*, 18 Duquesne L. Rev. 771, 771 (1980). In 2023 alone, prosecutors filed more than 1,300 wire fraud charges—the highest number since 1986. Hunter Taylor, Transactional Records Access Clearinghouse, Wire Fraud Charges and Convictions Projected to Reach Record Levels in FY 2023 (July 21, 2023), https://trac.syr.edu/reports/723/. Lately, however, prosecutors have gone too far and are now attempting to use the fraud statutes to convert basic breach of contract cases into federal fraud Indictments. Both the Supreme Court and the Eleventh Circuit continue to reverse fraud convictions that cross the line, but prosecutors remain undeterred. This Indictment is a good example of a prosecution that has ignored binding precedent about what is required to indict someone for fraud.

Counts 1 and 2 of the Indictment, as we previously noted, are a maze of allegations. Many of the paragraphs in Count 1, however, allege only mere misrepresentations or regulatory offenses – neither of which is sufficient to charge fraud. Therefore, these supposed misdeeds, which fall short of fraud, should be stricken from Count 1.

The Eleventh Circuit in *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), made it clear that fraud under federal law requires more than a mere misrepresentation; it requires actual harm or loss to the victim. The court held that "[a] schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick." Id. at 1313. Importantly: "this is so even if the transaction would not have occurred but for the trick." *Id.* The court further explained, "If a defendant lies, but the lie does not affect the value of the bargain, then he has not committed a crime under the federal fraud statutes." Id. at 1314.

In *Takhalov*, women were hired to lure male patrons to a bar, but the women concealed the fact that they were employed by the bar. *Id.* at 1310-1311. The implication that the women might have future romantic interest in the men certainly "relates to" the drinks that the men purchased, in the sense that it substantially motivated the purchases. *See id*. at 1314. And those same men would have considered it "important" that purchasing drinks would not help them woo the women; indeed, the purchases may not have occurred "but[ ]for the lie." *Id*. at 1313. Yet the Eleventh Circuit held this is not criminal fraud.

Just last Term, the Supreme Court in *Ciminelli* rebuked the courts of appeals and district courts for "interpret[ing] the mail and wire fraud statutes to protect intangible interests unconnected to traditional property rights." *Ciminelli v. United States,* 598 U.S. 306 (2023).[1] The Court reversed the wire fraud convictions of a defendant who had secured a $750 million state project through a bid-rigging scheme. That the scheme denied the State the right to control to whom it made disbursements by sapping it of potentially valuable economic information about the bidders was irrelevant to the issue of whether or not a federal crime had been committed. "The right-to-control theory," said this Court, "cannot be squared with the text of the federal fraud statutes, which are limited in scope to the protection of property rights." *Id.* at 314 (internal quotation marks omitted). This informational deprivation was just another expansive theory of the kind that the Court has "consistently rejected" as "stray[ing] from traditional concepts of property." *Id; United States* v. *Guertin*, 67 F.4th 445, 451 (D.C. Cir. 2023) (explaining that, "when [an] employer receives the benefit of its bargain, [an] employee's lie merely deprives the employer of honesty as such, which cannot serve as the predicate for a wire fraud conviction"). To hold otherwise, as the Supreme Court recently cautioned, would make "a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law." *Ciminelli*, 598 U.S. at 310.

---

[1] And this Term, the Court has again taken up a fraud case involving misrepresentations, which did not result in loss – *Kousisis v. Untied States*, 23-909, presenting the question of whether deception to induce a commercial exchange can constitute mail or wire fraud, even if inflicting economic harm on the alleged victim was not the object of the scheme.

Applying this principle, a misrepresentation alone is insufficient to constitute fraud unless it materially affects the victim's decision-making and results in harm or loss. Regulatory violations or breaches of procedural rules may constitute wrongdoing, but unless they cause a tangible financial loss or deprive the victim of money or property, they cannot support a fraud conviction under the standard articulated in *Takhalov* and a string of recent Supreme Court cases including *Ciminelli*.

**Counts 1 & 2, Paragraph 7: The Shell Lab Rule**

Counts 1 and 2 allege that the defendants violated the Shell Lab Rule by billing Medicare for tests that were performed by third-party laboratories beyond the permissible 30% threshold. *See* ¶ 7 of Counts 1 & 2. While this may constitute a regulatory violation, it does not amount to fraud because:

- The Indictment does not allege that Medicare paid for services that were not performed or received.
- Medicare was billed for diagnostic testing that the patients actually received, and there is no indication of financial harm or loss to Medicare or the patients.
- The Shell Lab Rule is a procedural limitation, and its violation does not inherently affect the value of the services provided or the legitimacy of the transaction.

In *Takhalov*, the court explained that even if a victim enters into a transaction based on a misrepresentation, there is no fraud unless the victim suffers harm. *Id.* at 1313. Here, the government fails to allege any harm resulting from the alleged Shell Lab Rule violation, making this allegation insufficient to support fraud. This paragraph should therefore be stricken.

**Counts 1 & 2, Paragraphs 5-6, 8-10: Kickbacks**

The Indictment alleges that the defendants paid and received kickbacks to induce referrals for testing services. *See* ¶¶ 5-6, 8-10 of Counts 1 & 2. However, these allegations fail to establish fraud because:

- The government does not allege that the kickbacks resulted in Medicare or HRSA paying for unnecessary or substandard testing.
- Medicare and HRSA reimbursed for tests that were actually performed, and there is no suggestion that the tests were invalid, inaccurate, or deficient.
- The payment of kickbacks, while prohibited under the Anti-Kickback Statute, does not, by itself, cause harm or loss unless it leads to financial detriment to Medicare or HRSA.

Paying and receiving kickbacks is a separate crime and is actually charged in the Indictment. However, it does not constitute fraud. As *Takhalov* held, a lie that does not harm is not fraud. *Id.* at 1312. The Indictment fails to articulate any causal connection between the kickbacks and a tangible loss to Medicare or HRSA.

And the Eleventh Circuit has made clear in *United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007), that simply proving a kickback did not even meet the misrepresentation prong of fraud, let alone the loss:

> We hold that based on the facts of this case, representatives of Ocean and United paying kickbacks alone is not sufficient to establish health care fraud. While we acknowledge that paying kickbacks like those at issue in this case is a violation of 42 U.S.C. § 1320a–7b(b)(2)(A), we cannot hold that this conduct alone is sufficient to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare. *See United States v. Porter*, 591 F.2d 1048, 1055–56 (5th Cir.1979) (conspiracy to commit health care fraud was weakened where alleged kickbacks did not involve materially false statements or any money/property loss to Medicare).

These kickback paragraphs should be stricken.

**Counts 1 & 2, Paragraph 12: Emergency Use Authorization**

The Indictment alleges that the defendants used COVID-19 tests that were not authorized under the FDA's Emergency Use Authorization (EUA) program. *See* ¶ 7 of Counts 12. These allegations also fail to meet the *Takhalov* standard for fraud because:

- The government does not allege that the tests were ineffective, inaccurate, or otherwise worthless.
- Medicare and HRSA reimbursed for tests that were actually performed, and the Indictment does not describe how the use of non-EUA-authorized tests caused harm to these programs.
- The EUA requirements are regulatory standards, and their violation, without evidence of financial harm, does not constitute fraud.

**\* \* \***

The four remaining defendants all join this motion.

Fraud requires both a misrepresentation ***and*** harm or loss to the victim. The paragraphs above that do not allege a loss must be stricken.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:  /s/ David Oscar Markus
     David Oscar Markus
     Florida Bar Number 119318
     dmarkus@markuslaw.com

     /s/ Lauren Field Krasnoff
     Lauren Field Krasnoff
     Florida Bar Number 0086951
     lkrasnoff@markuslaw.com